Circuit Court for __Baltimore County_____
City or County

# CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

**DIRECTIONS:**
> *Plaintiff: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a). A copy must be included for each defendant to be served.*
> *Defendant: You must file an Information Report as required by Rule 2-323(h).*
> **THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.**

FORM FILED BY: [X] PLAINTIFF   [ ] DEFENDANT      CASE NUMBER _____
(Clerk to insert)

CASE NAME: Richard Gonzalaz, et al.                vs.    Duke Realty, LLC
               Plaintiff                                                          Defendant

JURY DEMAND: [X] Yes [ ] No      Anticipated length of trial: _____ hours or __1__ days
RELATED CASE PENDING? [ ] Yes [X] No   If yes, Case #(s), if known: _____

Special Requirements?   [ ] Interpreter (Please attach Form CC-DC 41)
                        [ ] ADA accommodation (Please attach Form CC-DC 49)

<b>NATURE OF ACTION</b> (CHECK ONE BOX)        <b>DAMAGES/RELIEF</b>

| TORTS | LABOR | A. TORTS |
|---|---|---|
| [ ] Motor Tort | [ ] Workers' Comp. | **Actual Damages** |
| [ ] Premises Liability | [ ] Wrongful Discharge | [ ] Under $7,500   [ ] Medical Bills |
| [ ] Assault & Battery | [ ] EEO | [ ] $7,500 - $50,000   $_____ |
| [ ] Product Liability | [ ] Other _____ | [ ] $50,000 - $100,000   [ ] Property Damages |
| [ ] Professional Malpractice | **CONTRACTS** | [ ] Over $100,000   $_____ |
| [ ] Wrongful Death | [ ] Insurance |   [ ] Wage Loss |
| [ ] Business & Commercial | [ ] Confessed Judgment |   $_____ |
| [ ] Libel & Slander | [X] Other  Breach | |
| [ ] False Arrest/Imprisonment | **REAL PROPERTY** | **B. CONTRACTS**    **C. NONMONETARY** |
| [ ] Nuisance | [ ] Judicial Sale | |
| [ ] Toxic Torts | [ ] Condemnation | [ ] Under $10,000   [X] Declaratory Judgment |
| [ ] Fraud | [ ] Landlord Tenant | [ ] $10,000 - $20,000   [ ] Injunction |
| [ ] Malicious Prosecution | [ ] Other _____ | [X] Over $20,000   [ ] Other _____ |
| [ ] Lead Paint | **OTHER** | |
| [ ] Asbestos | [ ] Civil Rights | |
| [ ] Other | [ ] Environmental | |
| _____ | [ ] ADA | |
| | [ ] Other _____ | |

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
    A. Mediation [ ] Yes [X] No      C. Settlement Conference [X] Yes [ ] No
    B. Arbitration [ ] Yes [X] No      D. Neutral Evaluation [X] Yes [ ] No

## TRACK REQUEST

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*
**THIS CASE WILL THEN BE TRACKED ACCORDINGLY.**
    [ ] 1/2 day of trial or less      [ ] 3 days of trial time
    [ ] 1 day of trial time      [ ] More than 3 days of trial time
    [ ] 2 days of trial time

**PLEASE SEE PAGE TWO OF THIS FORM FOR INSTRUCTIONS PERTAINING TO THE BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM AND COMPLEX SCIENCE AND/OR MEDICAL CASE MANAGEMENT PROGRAM (ASTAR), AS WELL AS ADDITIONAL INSTRUCTIONS IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, PRINCE GEORGE'S COUNTY, OR BALTIMORE COUNTY.**

Date _6/12/11_           Signature _____

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-205 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐
**Expedited**
Trial within 7 months
of Filing

☐
**Standard**
Trial within 18 months
of Filing

☐ EMERGENCY RELIEF REQUESTED _____   _____

Signature                          Date

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO AN ASTAR RESOURCE JUDGE under Md. Rule 16-202. Please check the applicable box below and attach a duplicate copy of your complaint.*

☐ Expedited - Trial within 7 months of Filing          ☐ Standard - Trial within 18 months of Filing

---

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, PRINCE GEORGE'S COUNTY, OR BALTIMORE COUNTY PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

☐ Expedited          Trial 60 to 120 days from notice. Non-jury matters.

☐ Standard-Short     Trial 210 days.

☐ Standard           Trial 360 days.

☐ Lead Paint         Fill in: Birth Date of youngest plaintiff _____ .

☐ Asbestos           Events and deadlines set by individual judge.

☐ Protracted Cases   Complex cases designated by the Administrative Judge.

### CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY

To assist the Court in determining the appropriate Track for this case, check one of the boxes below. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.

☐ Liability is not conceded, but is not seriously in dispute.

☐ Liability is seriously in dispute.

## CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited<br>(Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☒ | Standard<br>(Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard<br>(Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex<br>(Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

CC/DCM 002 (Rev. 2/2010)

| | | |
|---|---|---|
| RICHARD GONZALEZ<br>3320 HIDDEN CREED DRIVE<br>REISTERSTOWN, MD 21136 | * | IN THE |
| | * | CIRCUIT COURT |
| And | * | OF MARYLAND FOR |
| VICKI GONZALEZ<br>3320 HIDDEN CREED DRIVE<br>REISTERSTOWN, MD 21136 | * | BALTIMORE COUNTY |
| And | * | |
| VNR ENTERPRISES, LLC<br>3320 HIDDEN CREED DRIVE<br>REISTERSTOWN, MD 21136 | * | Case No:_____ |

RICHARD GONZALEZ                    *        IN THE
3320 HIDDEN CREED DRIVE
REISTERSTOWN, MD 21136              *        CIRCUIT COURT

                                   *        OF MARYLAND FOR
And
                                   *        BALTIMORE COUNTY
VICKI GONZALEZ                     *
3320 HIDDEN CREED DRIVE
REISTERSTOWN, MD 21136             *

And                                *        Case No:_____

VNR ENTERPRISES, LLC               *
3320 HIDDEN CREED DRIVE
REISTERSTOWN, MD 21136             *

          Plaintiffs               *
v.                                 *

DUKE REALTY, LLC                   *
7-C Gwynns Mill Court
Owings Mills, MD 21117             *

                                   *
     Serve:
     NORTHWEST BUSINESS            *
     7-C Gwynns Mill Court
     Owings Mills, MD 21117        *

          Defendant                *
*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND JURY DEMAND

Plaintiffs, Richard Gonzalez, Vicki Gonzalez and VNR Enterprises, LLC ("VNR"), a

Maryland Company, hereby file suit against Defendant Duke Realty ("Landlord") and state:

**PARTIES**

1.    Richard Gonzalez and Vicki Gonzalez reside at 3320 Hidden Creek Drive, Reisterstown, MD 21136, Baltimore County.

2.    VNR Enterprises is a company organized and existing under the laws of the State of Maryland.

3.    Duke Realty, LLC ("Landlord") is a company organized and existing under the laws of the State of Maryland with its principal place of business located at 7-C Gwynns Mill Court, Owings Mill, MD 21117, Baltimore County.

**JURISDICTION**

4.    This Court has jurisdiction over this matter in accordance with Maryland Courts and Judicial Proceedings Article, § 6-102 because Landlord is organized under the laws of Maryland and maintains a principal place of business in the State of Maryland, Baltimore County.

5.    Venue is properly vested in accordance with Maryland Courts and Judicial Proceedings Article, § 6-201 since Landlord conducts business in the State of Maryland, Baltimore County.

**FACTS INCIDENTAL TO ALL COUNTS**

6.    The Plaintiffs have been a tenant of Landlord starting on or about March 15, 2005 when the parties signed an Original Lease ("Original Lease") for the premises located at 1115 N. Rolling Rd, Baltimore, MD 21228 ("Premises").  A true and accurate copy of the Original Lease is attached as Exhibit 1.

7.    The Original Lease was for "a period of two years" with the Plaintiffs

having the "option to renew the Original Lease for an additional three year term, upon the same terms…" Exhibit 1 ¶2.

8.      Furthermore, the Plaintiffs had the "option for a third renewal term to the Original Lease an additional five year term at the end of the second term…" Exhibit 1 ¶2.

9.      Satisfied with the Premises, the Plaintiffs notified Landlord that they intended to renew the Original Lease. Exhibit 2.  See, Plaintiffs' letter to Landlord, attached hereto as Plaintiffs' Exhibit 2.

10.      On or about March 30, 2010, the Plaintiffs and Landlord  entered into an amendment of the Original Lease with Landlord (the "Amendment").  A true and accurate copy of the Amendment is attached as hereto as the Plaintiffs Exhibit 3.

11.      Per the Amendment, the Plaintiffs monthly base rent is $4,637.10. The base rent will change to $4,776.21 starting of May 1, 2011.  Exhibit 3.

12.      One of the key changes included in the Amendment, and a significant point of contention among the parties, is the formula for determining the Plaintiffs' share of the common area expenses.

13.      Per the Original Lease, the share of the common area expenses attributable to Plaintiffs was capped based on the square foot of the Premises. The Original Lease expressly states: "Tenant's annual share of such costs and expenses shall be computed as $.50 per square foot of Tenant's Premises." Exhibit 1 ¶8. Therefore the Plaintiffs were paying $4,000.00 per year in common area expenses, $.50 multiplied by their 8,000 square foot space.

14.      The Amendment changed the calculation of each tenant's common area

expenses to a percentage of all such expenses. The Amendment expressly stated that, "The intent of this Original Lease Amendment is to provide that beginning May 1, 2010, Tenant's share (12%) of the Common Areas Expenses shall be 12%." Exhibit 3 ¶ 2.

15.    In addition to paying for 12% of common area expenses, Plaintiffs are forced to pay a  management fee of 15% of all rents collected and another administrative fee equal to 15%of the total common area expenses. Per the agreement, the Plaintiffs shall pay "an amount equal to fifteen (15%) of the total of all the foregoing costs and expenses to cover landlord's administrative costs. Exhibit 1 ¶ 8.

16.    During the negotiations, the Plaintiffs expressed concerns about their share of the common area expenses and wrote the Landlord requesting a cap be put in place. "...we are willing to sign off on the Addendum with one small change. We respectfully request a cap of $8,000.00 per year as our share of the "Common Area" expenses. So, simply stated, we are willing to pay the 12% or $8,000.00 whichever is less." Exhibit 4. Letter from Richard Gonzalez to Landlord's attorneys, Michael Snyder and Coady and Farley, dated February 15, 2010.

17.    In response, Landlord declined to agree to a cap, but expressly stated it did not "see any significant increases in these expenses in the near future." Exhibit 5.  Michael L. Snyder's letter to Richard Gonzalez dated March 3, 2010.

18.    Landlord's claimed common area expenses have skyrocketed since the signing of the Amendment.

19.    Property manager for the premises, the Loughlin Management Group ("Loughlin"), has provided records claiming that 2009 common area expenses including the administrative fee was $80, 967.41. Exhibit 6 2009 Operating Expense Reconciliation, attached

hereto. In stark contrast, 2010 Loughlin claimed common area expenses and administrative fee

totaled $129,509.04. Exhibit 7 2010 Operating Expense Reconciliation, attached hereto.

20.     By comparison the difference between the 2008 common area expenses

and administrative cost ($72,689.29) and the 2009 figures shown above was less than $9,000.00.

Exhibit 8 2008 Operating Expense Reconciliation – Revised.

21.     Per the Amendment, the share of 2010 common area expenses assigned to

the Plaintiffs was $15,541.09. This represented an almost 100% jump from the $8,000.00

represented at the time of the Amendment.

22.     As expressly stated in the agreement, Maryland law applies. "This

Original Lease shall be construed in accordance with the laws of the State of Maryland." Exhibit

1 ¶ 33.

**COUNT I**

**<u>DECLARATORY JUDGMENT</u>**
(Invalidity of Section 2 of Amendment)

23.     Paragraphs 1 through 22 are hereby incorporated as paragraphs 1 through

22 of Count I as if fully set forth herein.

24.     Upon information and belief, Landlord knew at the time the Amendment

was entered into that the common area expenses would significantly increase when compared to

the same expenses under the Original Lease.

25.     Landlord's representation was false and Landlord knew it was false at the

time it was made.

26.     Landlord made representations to deceive and induce the Plaintiffs into

signing the Amendment.

27.     The Plaintiffs justifiably relied on Landlord's representations about

common area expenses and were justified in so relying upon the representation.

28.    As a result of Landlord's misrepresentations, Plaintiffs' execution of the Amendment was induced by fraud.

29.    The Amendment was drafted by Michael L. Snyder who was retained by Landlord.

30.    Actual controversy exists between the Plaintiffs and Landlord within the meaning of section 3-406 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

31.    Accordingly, the Plaintiffs seeks a declaration pursuant to §3-406 and §3-409 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland that section 2 of the Amendment dealing with the computation of common area expenses was fraudulently obtained and therefore was void ab initio and is of no effect.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

A. Issue a declaration that section 2 of the Amendment dealing with computation of common area expenses was fraudulently entered into and  therefore was void ab initio and is of no effect and

B. Grant such other and further relief as it deems appropriate.

## COUNT II

## INTENTIONAL MISREPRESENTATION

32.    Paragraphs 1 through 31 of Count I are hereby incorporated as paragraphs 1 through 31 of Count II as if fully set forth herein.

33.    As stated above, Landlord affirmatively represented that it did not "see any significant increases in these expenses in the near future," referring to common area expenses. Exhibit 5. This statement was false at the time it was made.

34.   At the time, Landlord made this representation it had knowledge of its falsity or acted with such indifference to the truth so as to impute knowledge.

35.   This representation was made to defraud the Plaintiffs into signing the Amendment.

36.   The Plaintiffs justifiably relied on the false representation.

37.   As a result of the Landlord's intentional misrepresentation, the Plaintiffs incurred damages.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

A.   Order that section 2 of the Amendment dealing with computation of common area expenses was fraudulently entered into and therefore was void ab initio and is of no effect and

B.   That this court order restitution to the Plaintiffs from Landlord in an amount to be ascertained at trial after a proper accounting;

C.   Award money damages in the amount in excess of $1 million, plus interest, costs and attorneys fees; and

D.   Grant such other and further relief as it deems appropriate.

## COUNT III

## NEGLIGENT REPRESENTATION

38.   Paragraphs 1 through 37 of Count II are hereby incorporated as paragraphs 1 through 37 of Count III as if fully set forth herein.

39.   Landlord owed a duty of care to the Plaintiffs when negotiating the Amendment to be honest, forthright and diligent in making its expense projections.

40.   As stated above, Landlord negligently stated a false statement to the Plaintiffs, which it intended them to act upon.

41.    Landlord knew that the Plaintiffs would probably rely upon and were, in fact, relying upon Landlord, which, if erroneous, would cause them to suffer damages.

42.    The Plaintiffs justifiably relied upon Landlord's false statement by, among other things, entering into the Amendment and continuing to invest to improve their establishment.

43.    As a result of the Landlord's negligent misrepresentations, the Plaintiffs have suffered damages.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

    A. Order that section 2 of the Amendment dealing with computation of common area expenses was fraudulently entered into and  therefore was void ab initio and is of no effect and

    B. That this court order restitution to the Plaintiffs from Landlord in an amount to be ascertained at trial after a proper accounting;

    C. Award money damages in the amount in excess of $1 million, plus interest, costs and attorneys fees; and

    D. Grant such other and further relief as it deems appropriate.

## COUNT IV

### DECEIT
(Damages)

44.    Paragraphs 1 through 43 of Count III are hereby incorporated as paragraphs 1 through 43 of Count IV as if fully set forth herein.

45.    Landlord owed the Plaintiffs a duty of care when it induced the Plaintiffs to sign the Amendment, extending the Original Lease, to disclose material facts about the common area expenses.

46.    As stated above, Landlord breached its duty of care to Plaintiffs by failing

injurious to the Plaintiffs.

54. That Landlord has failed to render such an accounting.

WHEREFORE, the Plaintiffs respectfully requests that this Court:

A. That Landlord is ordered by a decree of this Court to fully and completely account for all rents, common area expenses and management fees charged to the Plaintiffs;

B. Grant judgment against Defendant in the sum found to be due to Plaintiff on such accounting, with interest together with the costs and disbursements of this action;

C. Award money damages in the amount in excess of $1 million, plus interest, costs and attorneys fees; and

D. Grant such other and further relief as it deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, Richard Gonzalez, Vicki Gonzalez and VNR Enterprises, LLC hereby demand a jury trial upon all claims stated above triable of right by a jury.

Respectfully submitted,

H. Mark Stichel
Jan I. Berlage
Gohn, Hankey & Stichel, LLP
201 N. Charles Street
Suite 2101
Baltimore, Maryland 21201
(410) 752-9300

Attorney for Plaintiffs

## LEASE

**THIS LEASE**, made this _15_ day of _MARCH_ , 2005, by and between DUKE REALTY, LLC, a limited liability company organized under the laws of the State of Maryland, (hereinafter referred to as **"Landlord"**), RICHARD M. GONZALEZ and VICKI M. GONZALEZ, and VNR ENTERPRISES, LLC, (hereinafter referred to as **"Tenant"**).

### WITNESSETH:

1.   **PREMISES**.  Landlord hereby demises and leases to Tenant, and Tenant leases, rents and accepts from Landlord, the premises described as follows (hereinafter called "Premises"):

> 1115 N. Rolling Road, Baltimore, Maryland 21228 (formerly Father's House Church space)

The Tenant accepts the Premises in "AS IS " condition.  Landlord shall not be responsible to perform any work on the Premises to prepare it for Tenant's occupancy.  The Premises are located at 1115 N. Rolling Road, Baltimore, Maryland 21228.  The Premises do not include the exterior walls, roof, or the land beneath the Premises, and no rights, licenses, or easements are created hereunder, except as expressly demised hereunder.  Landlord shall have the right to relocate Tenant to a different location within the shopping center in which the Premises are a part; provided that the new location is comparable to the Premises and the Landlord pays all expenses of such relocation; and also provided that such relocation does not adversely affect Tenants' ability to operate business in the same manner as prior to such relocation.

2.   **TERM**.  The term of this Lease shall be for a period of two years, commencing on that date which is the earlier of the date on which the Tenant opens for business or 30 days from the date of this Lease, (the "Commencement Date") and ending on that date which is two years from the Commencement Date, both dates inclusive.  Tenant shall occupy the Premises as soon as the Commencement Date occurs, or upon delivery of possession of the Premises to Tenant.  Provided Tenant is not in default under the Lease, Tenant shall have an option to renew the Lease for an additional three year term, upon the same terms, except as otherwise set forth in this Lease, provided that Tenant shall notify Landlord of Tenant's election to renew at least 180 days prior to the end of the initial term.  Provided Tenant is not in default under the Lease, Tenant shall have a second option to renew the Lease for an additional five year term at the end of the second term of three years, upon the same terms, except as otherwise set forth in this Lease, provided that Tenant shall notify Landlord of Tenant's election to renew at lease 180 days prior to the end of the second term.  Provided Tenant is not in default under the Lease, Tenant shall have an option for a third renewal term to renew the Lease for an additional five year term at the end of the third term, upon the same terms, except as otherwise set forth in this Lease, provided that Tenant shall notify Landlord of Tenant's election to renew at least 180 days prior to the end of the third term.



The Landlord shall deliver possession to the Tenant on the date this Lease is executed (the "Delivery Date").

Tenant's occupancy of the Premises shall constitute acceptance of said Premises by Tenant. During the period following the Delivery Date, Tenant shall at its own risk be permitted to enter the Premises without payment of minimum rent for the purpose of performing Tenants Work with said premises. In connection therewith, all of the other terms and provisions of this Lease shall be in full force and effect other than Tenants' obligation to pay minimum rent and in furtherance thereof, but not by way of limitation, Tenant shall provide to Landlord all insurance required hereunder.

3.    **BASE RENT**.

(a)    Tenant covenants and agrees to pay to Landlord at Landlord's principal office set forth above, or at such other place as Landlord may designate from time to time, without notice or demand, and without any abatement, deduction, diminution, reduction, recoupment or set-off whatsoever, a fixed monthly Base Rent as set forth below, which shall be punctually paid monthly in advance on the first day of each calendar month throughout the term of this Lease, as the same may be extended or renewed. It is acknowledged by the parties hereto that the late payment by Tenant to Landlord of Base Rent or any other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount being difficult to ascertain. Therefore, in the event Landlord does not actually receive any installment of Base Rent or any other sum due under this Lease by 5:00 p.m. on the fifth (5th) day after the due date thereof, Tenant shall pay to Landlord as additional rent a late charge equal to ten percent (10%) of each such installment of Base Rent or other sum, or Twenty Five dollars ($25.00), whichever is greater. In addition, Tenant shall pay to Landlord One Hundred Dollars ($100.00) for each check presented to Landlord which is not paid by the bank upon which such check is drawn. The monthly Base Rent shall be as follows:

| Period | Monthly Amount |
| --- | --- |
| 5/1/2005 - 4/30/2006 | $4,000.00 |
| 5/1/2006 - 4/30/2007 | $4,120.00 |
| 5/1/2007 - 4/30/2008 | $4,243.60 |
| 5/1/2008 - 4/30/2009 | $4,370.91 |
| 5/1/2009 - 4/30/2010 | $4,502.04 |
| 5/1/2010 - 4/30/2011 | $4,637.10 |
| 5/1/2011 - 4/30/2012 | $4,776.21 |
| 5/1/2012 - 4/30/2013 | $4,919.50 |
| 5/1/2013 - 4/30/2014 | $5,067.08 |
| 5/1/2014 - 4/30/2015 | $5,219.09 |
| 5/1/2015 - 4/30/2016 | $5,375.66 |
| 5/1/2016 - 4/30/2017 | $5,536.93 |
| 5/1/2017 - 4/30/2018 | $5,703.04 |
| 5/1/2019 - 4/30/2019 | $5,874.13 |

|  |  |
|---|---|
| 5/1/2019 - 4/30/2020 | $6,050.35 |

A pro rata monthly installment of the Base Rent shall be due for the first month of the term if the Commencement Date is a day other than the first day of a calendar month. **The first month's rent shall be paid at the time of execution by Tenant of this Lease.**

       (b)    The Base Rent shall increase each year by three percent (3%) of the previous year's Base Rent (as set forth in the table above).

    4.    **SECURITY DEPOSIT**.  Tenant shall deposit with Landlord, on the date of execution of this Lease, the sum of $4,000.00 as security for proper compliance by Tenant with the terms of this Lease.  In the event of any default by Tenant under any terms or covenants of this Lease, Landlord may, but shall not be required to, use, apply, or retain the whole or any part of the security so deposited to the extent required for the payment of any rent, or for any other sum which Landlord may expend related to such default by Tenant, including without limitation any damages to the Premises or deficiency in the reletting of the Premises.  The security deposit shall not be used as rent, shall not constitute liquidated damages, and shall not bear interest. Landlord shall reimburse Tenant for said security deposit, less any amounts retained hereunder, after the premises have been vacated and inspected and all keys returned.  In the event of sale or transfer of the Premises, or any cessation of Landlord's interest therein, Landlord may assign any unapplied portion of said security deposit to the succeeding owner of the Premises, and from and after such assignment, Landlord shall be relieved of any liability with respect thereto, and Tenant shall look solely to such new owner for the return of said security deposit.

    5.    **USE OF PREMISES**.  Tenant shall use and occupy the premises for a membership club and for no other purpose whatsoever without the prior written consent of Landlord.  In no event shall the Premises be used in any of the following manners, nor for any of the following purposes:  (a) any illegal usage; (b) any violation of any laws or certificate of occupancy; (c) any manner which creates a nuisance or trespass; (d) any manner which produces, reproduces or transmits sounds which are audible outside the Premises or objectionable odors emanating from the Premises; (e) any manner which in the reasonable judgment of Landlord impairs or adversely affects the appearance of the property on which the Premises are located; (f) any manner which obstructs or encumbers the sidewalks or other common areas; (g) any manner which exceeds the floor load which such floor was designed, or is permitted by law, or carry; (h) for any disorderly or hazardous purpose; (i) for the keeping or storage of any inflammable, combustible or explosive fluid, chemical or substance.  Tenant shall hold Landlord harmless and indemnify Landlord from all claims arising out of Tenant's operations on the Premises.

    Tenant has examined the Premises, and has accepted same, and all buildings, equipment, and improvements thereon, in their present "as is" condition (unless otherwise specified herein) and without any representation or warranty by Landlord, express or implied, as to the condition thereof, or as to the use or occupancy which may be made thereof.  Tenant shall be solely responsible for obtaining and complying with all certificates of use and occupancy, building and use permits, zoning regulations, licensing, and all other laws and regulations relating to Tenant's use and occupancy of the Premises.

6.   **REAL ESTATE TAXES**.   In addition to the Base Rent provided above, Tenant covenants and agrees to pay to Landlord as additional rent an amount equal to Tenant's pro rata share of any real estate taxes (including the cost of appeal of such taxes) that may be levied, assessed or imposed against the property on which the Premises are located (the entire Shopping Center property owned by Landlord at this location).   For the purposes of this paragraph, it is mutually agreed that Tenant's pro rata share is 12%.   Tenant shall pay to Landlord each month, along with the Base Rent, an amount equal to one-twelfth (1/12) of Landlord's estimate of Tenant's pro rata share of the real estate taxes for the then current year.   The monthly installments for the first year will be deferred and become due and payable in full and may be paid in full prior to the end of the first year of the Lease.   Upon final determination of the taxes for each year, Landlord shall compute Tenant's share thereof, and a summary shall be furnished to Tenant reflecting the actual amount of such taxes.   In the event the additional rent paid by Tenant during the preceding year shall be in excess of Tenant's pro rata share, the excess shall be credited against the next ensuing payments due from Tenant hereunder.   In the event the amount paid by Tenant shall be less than Tenant's pro rata share, Tenant shall pay the remaining balance to Landlord within ten (10) days after notice to Tenant of such balance.   Landlord shall also notify Tenant of its computation of the estimated sums to become due from Tenant each month for the ensuing year hereunder and the monthly payments to be made hereunder shall be adjusted accordingly for each ensuing year.

7.   **INSURANCE PREMIUMS**.   In addition to the Base Rent provided above, Tenant covenants and agrees to pay to Landlord as additional rent an amount equal to Tenant's pro rata share of any insurance premiums paid by Landlord for all insurance coverage on the Premises and the entire Shopping Center owned by Landlord at this location on which the Premises are located.   For purposes of this paragraph, it is mutually agreed that Tenant's pro rata share is 12%.   However, should Tenant's actions cause an increase in the fire rate or other insurance on the Premises or the building, Tenant shall be fully responsible for payment of any such increase.   Tenant shall pay to Landlord each month, along with the Base Rent, an amount equal to one-twelfth (1/12) of Landlord's estimate of Tenant's pro rata share of the insurance premiums for the then current year.   The monthly installments for the first year will be deferred and become due and payable in full prior to the end of the first year of the Lease.   Upon final determination of the insurance premiums for such year, Landlord shall compute Tenant's share thereof, and a summary shall be furnished to Tenant reflecting the actual amount of such premiums.   In the event the additional rent paid by Tenant during the preceding year shall be in excess of Tenant's pro rata share, the excess shall be credited against the next ensuing payments due from Tenant hereunder.   In the event the amount paid by Tenant shall be less than Tenant's pro rata share, Tenant shall pay the remaining balance to Landlord within ten (10) days after notice to Tenant of such balance.   Landlord shall also notify Tenant of its computation of the estimated sums to become due from Tenant each month for the ensuring year hereunder and the monthly payments to be made hereunder shall be adjusted accordingly for each ensuing year.

8.   **COMMON AREAS**.   Landlord hereby grants to Tenant a non-exclusive license to use the parking, sidewalks, and other common areas of the property as they are or may be from time to time constituted.   Landlord shall at all times maintain the common areas in good

-4-

condition and repair.  Tenant shall be responsible for maintaining the common area adjacent to the Premises clean and free of trash and debris.  All common facilities shall at all times be subject to the exclusive control and management of Landlord, and Landlord shall have the right from time to time to change the area, level, location and arrangement of the common facilities, to restrict parking by tenants and their employees to employee parking areas, and to make all rules and regulations and do such other things as in Landlord's discretion may be necessary regarding said facilities.  Tenant to pay to Landlord on a monthly basis its pro rata share (12%) of any snow removal costs incurred by Landlord for more than two major storms per year.

Tenant agrees to pay to Landlord in the manner hereinafter provided, but not more often than once each calendar month, Tenant's share of all costs and expenses of every kind and nature paid or incurred by Landlord in operating, equipping, policing and protecting, lighting, repairing, replacing, managing and maintaining the entire "Shopping Center", including, without limitation, the common areas, all buildings and permanent improvements upon the Shopping Center.  Such costs and expenses shall include, but not be limited to; illumination and maintenance of Shopping Center signs, whether located on or off the Shopping Center site; cleaning; lighting; all water consumed in the Shopping Center and sanitary sewer charges; snow removal; line painting and landscaping; repairs and replacements, including roof and building repairs and replacements; personal property taxes; all costs of operating attendant and valet parking, if any; decorations; supplies; total compensation and benefits (including premiums for workers' compensation and other insurance) paid to or on behalf of employees involved in the performance of the work specified in this Section; and an amount equal to fifteen percent (15%) of the total of all of the foregoing costs and expenses to cover Landlord's administrative costs. For the purpose hereof, any charges for utilities contained in the foregoing costs and expenses shall be at the same rates as the rates for comparable service from the applicable utility company serving the area in which the Shopping Center is located.  Cost of operation and maintenance shall include: all costs and expenses in connection with the operation, repair, replacement and maintenance of such common areas and all buildings and permanent improvements upon the Shopping Center, including, without limitation, legal, architectural and engineering fees.  For the first 12 months of the Lease only, Tenant may pay its share at the end of the first 12 months of the Lease term.

Tenant's annual share of such costs and expenses shall be computed as $.50 per square foot of Tenant's Premises.  The Tenant's Premises shall be estimated to be 8,000 square feet.  The term "Shopping Center" shall mean all of the contiguous properties owned by Landlord at this location which the Premises is a part of.

Tenant's share of such costs and expenses with respect to each calendar year during the term of this Lease shall be paid in monthly installments on the first day of each calendar month, in advance, or Landlord may, at its sole option, bill such costs and expenses monthly in arrears.

9.    **UTILITIES.**  Tenant shall promptly pay all charges for electricity, water, gas, telephone service, sewerage service, and other utilities furnished to the Premises.  Tenant shall be responsible for its own trash removal and cleaning services.  Landlord may furnish one or

-5-

more utility services to Tenant, and in such event Tenant shall reimburse Landlord, on a monthly basis either based on actual bills received or based on Landlord's estimate of such bills for its pro rata share of such utilities as additional rent hereunder. Landlord's estimate of Tenant's pro rata share of the monthly cost of utilities to be provided by Landlord is $N/A, which amount Tenant shall pay to Landlord as additional rent each month during the term of this Lease, and which amount shall be subject to adjustment based on actual bills received. Landlord shall have no liability for any inadequacy, cessation or interruption of any utility. Tenant covenants and agrees not to install or utilize any equipment which may or will exceed or overload the capacity of any utilities furnished or servicing the Premises, or which will or may necessitate any changes, replacements or additions to the water system, heating system, air conditioning system or the electrical system of the Premises.

10.   **MAINTENANCE AND REPAIRS.**

(a)   Landlord will keep and maintain in good order and repair the roof and the exterior and principal structural portions of the building in which the Premises are located. Landlord agrees to repair all roof leaks prior to Commencement Date. Landlord shall not be responsible for or be required to make, and Tenant will make, any repairs which may have been occasioned or necessitated by the acts of Tenant, its agents, employees or invitees. Landlord shall be responsible for landscape maintenance, and parking lot lighting.

(b)   Tenant will, at its own expense, keep and maintain in good order and repair and shall replace if necessary, during the full term of this Lease, all other parts of the Premises, including without limitation the entire interior and all window glass, plate glass, plumbing, wiring, electrical systems, heating and air conditioning systems, overhead doors, door sills, window frames, caulking, gutters, downspouts, dock bumpers, and loading docks. Tenant shall be responsible for pest control on the Premises. Tenant shall secure and maintain a full service contract on all heating and air conditioning equipment servicing the Premises, with a company acceptable to Landlord, and shall deliver a copy of such service contract to Landlord upon the commencement of this Lease and whenever a change of company is made. Tenant to deliver copies of service reports to Landlord within 10 days of each service call. Tenant will, upon termination of this Lease, deliver the Premises to Landlord in as good condition as when received, normal and ordinary wear and tear accepted. In the event Tenant should fail to make any necessary repairs, Landlord shall have the right to make such repairs, and any charge or cost so incurred by Landlord shall be paid by Tenant, with the right of Landlord to elect in its discretion to regard the same as additional rent hereunder.

11.   **ALTERATIONS.**   Tenant will not make any alterations, installations, changes, additions, or improvements (structural or otherwise) in or to the Premises or any part thereof, including the land on which said Premises are situated, without the prior written consent of Landlord. It is agreed by Landlord and Tenant that it is necessary to make certain non-structural improvements to the interior of the Premises for purposes of setting up the "Membership Club", and that Landlord shall approve such plans in an expedient manner. All alterations, installations, changes, additions to or improvements upon the Premises (other than trade fixtures) shall, at the election of Landlord, remain upon the Premises and be surrendered with the Premises at the

-6-

expiration of this Lease without disturbance, molestation or injury. Should Landlord elect that alterations, installations, changes, additions to or improvements upon the Premises be removed and the Premises restored upon termination of this Lease, Tenant hereby agrees to cause same to be removed at Tenant's sole cost and expense. If Tenant shall fail to remove same, Landlord may have the cost of such removal deducted from any security deposit held by Landlord. Tenant shall remain liable to Landlord for the total cost of such removal if the security deposit should not be sufficient to cover such cost and other charges allowed under Paragraph 4 hereof. Tenant will not permit any mechanic's lien or liens to be placed upon the Premises and agrees, if any such lien be filed on account of the acts of Tenant, promptly to pay same. In the event Tenant fails to pay any such lien, it may be paid by Landlord and charged to Tenant as additional rent hereunder.

12.   **SIGNS**.   Tenant shall not place or maintain, without first obtaining prior written consent from both Landlord and all governmental bodies having jurisdiction thereof, any lettering, signs, awnings, advertising matter, or any other items of any kind on the roof, doors, windows, store front or the exterior of the Premises. Tenant shall not mark, paint, or in any manner deface the Premises. No stringing of wires, boring or cutting shall be permitted except with Landlord's prior written consent.

13.   **PERSONAL PROPERTY**.   All personal property of Tenant in the Premises shall be at the sole risk of Tenant. Landlord shall not be liable for any accident to or damage to property of Tenant resulting from the use of heating, cooling, electrical or plumbing apparatus, nor from water, steam or other causes except through the negligence of the Landlord or failure to complete timely repairs for which the Landlord is otherwise responsible. Tenant hereby expressly releases Landlord from any liability incurred or claimed by reason of damage to Tenant's property except as outlined above. Landlord shall not be liable in damages, nor shall this Lease be affected, for conditions arising or resulting from construction on contiguous premises.

14.   **INSURANCE**.   Tenant shall maintain the following insurance with an insurance company with a Best's Rating of A X or greater: (1) Commercial General Liability: Bodily Injury and Property Damage, Combined Single Limit, $1,000,000 per occurrence, $1,000,000 aggregate. The general aggregate limit is to apply on a per location or per project basis; (2) Comprehensive Automobile Liability, including Employers Non-Ownership and Hired Automobile coverage, with a Combined Single Limited of liability of $1,000,000; (3) Workers Compensation as prescribed by law, including employer's liability for limits of $100,000 each accident, $500,000 policy limit by disease, and $100,000 each employee by disease; (4) plate glass insurance covering all plate glass in or on the Premises, contents insurance on Tenant's goods, fixtures and inventory in or on the Premises, on an all risk or special causes of loss basis, including theft, at full replacement cost. **Landlord shall be name as an Additional Insured in all such policies. Tenant shall deliver a certificate of insurance to Landlord upon commencement of the term of this Lease and continuing evidence of such coverage annually.** Such insurance policies shall provide that they cannot be canceled without at least sixty (60) days' prior notice to Landlord. All such policies shall include appropriate clauses pursuant to which the insurance carriers waive all rights of subrogation against the Landlord with

-7-

respect to losses payable under such policies. In the event Tenant shall fail to provide such insurance, or shall fail to pay the premiums when due, Landlord shall have the right to cause such insurance to be issued and to pay the premiums therefore, or any premiums in default, and to collect the same from Tenant as additional rent hereunder.

15.   **CASUALTY DAMAGE.**   In case of damage by fire or other casualty to the Premises or any part thereof, Landlord shall be responsible for the repair and restoration of all exterior and principal structural portions of the building in which the Premises are located. Tenant shall be responsible for the repair and restoration of all interior and non-structural portions of the Premises, and for the repair and restoration of all Tenant improvements to the Premises. Landlord shall have sixty (60) days within which to commence such repair and restoration without terminating this Lease. Landlord shall incur no liability on account of any delay in the completion of such repairs which may arise by reason of adjustment of insurance, labor difficulties or any other cause beyond Landlord's control. During the period that Tenant is deprived of the use of the damaged portion of the Premises, Tenant shall be required to pay rental covering only that part of the Premises that it is able to occupy. If all or substantially all of the Premises become unfit for occupancy as a result of fire or other casualty, Landlord may elect (i) to terminate this Lease by written notice to Tenant within thirty (30) days after the date of the casualty, or (ii) to repair, restore or rehabilitate the Building, in which latter event the Lease shall not terminate but rent shall be abated on a per diem basis while the Premises are unfit for occupancy. If the damage is so extensive that the Premises are not substantially repaired and restored within six (6) months from the occurrence of said fire or other casualty, Tenant may cancel this Lease.

16.   **CONDEMNATION.**

(a)   If the Premises shall be taken or condemned either permanently or temporarily (for a period lasting more than six months) for any public use or purpose by any competent authority in appropriation proceedings or by any right of eminent domain or by agreement or conveyance in lieu thereof (each being hereinafter referred to as "condemnation"), this Lease shall terminate as of the day possession shall be taken by such authority. If any part of the property of which the Premises are a part (including, without limitation, the common areas) is taken by condemnation so as to render, in Landlord's judgment, the remainder unsuitable for its present use, Landlord shall have the right to terminate this Lease upon notice in writing to Tenant within one hundred twenty (120) days after possession is taken by such condemnation. Tenant shall pay rent and perform all of its other obligations under this Lease up to that date, with a proportionate refund by Landlord of any rent as may have been paid in advance for a period subsequent to the date of the taking.

(b)   As between Landlord and Tenant, all damages for condemnation of all or any part of the property and/or the Premises, including but not limited to all damages as compensation for diminution in value of the leasehold, reversion, and fee, shall belong to Landlord without any deduction therefrom for any present or future estate of Tenant, and Tenant hereby assigns to Landlord all its right, title and interest to any such award. Although all damages in the event of any condemnation are to belong to Landlord, Tenant shall have the right

-8-

to claim and recover from the condemning authority, but not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any cost or loss which Tenant might incur in removing Tenant's merchandise, furniture, leasehold improvements and equipment.

17. **DEFAULT**.

(a)     Tenant shall be in default under this Lease upon the occurrence of any one or more of the following, each of which shall be deemed to be a material default:

(i)     Landlord does not actually receive payment of the full amount of Base Rent, additional rent or any other payment due hereunder punctually on the due date thereof;

(ii)     Tenant fails to fully and punctually observe or perform any of the terms or covenants of this Lease;

(iii)     Tenant fails to take possession or occupancy of, or deserts or abandons the Premises;

(iv)     Tenant shall make an assignment for the benefit of creditors or shall file or have filed against it a petition for bankruptcy or receivership and the same shall not be dismissed within thirty (30) days of the filing thereof.

(b)     Upon the occurrence of any one or more of the aforesaid events of default, or upon the occurrence of any other default hereunder, Landlord may, at Landlord's option, without any demand or notice whatsoever (except as expressly required herein):

(i)     Terminate this Lease by giving Tenant notice of termination, in which event this Lease shall expire and terminate on the date specified in said notice, and all rights of Tenant shall expire and terminate, and Tenant shall remain liable for all obligations under this Lease up to the date of termination, and Tenant shall surrender the Premises to Landlord on the date specified in the notice; or

(ii)     Terminate this Lease as provided in 17(b)(i) above and recover from Tenant all damages Landlord may incur by reason of Tenant's default, including without limitation all amounts that would have been payable under this Lease, all of which shall be deemed immediately due and payable; or

(iii)     Without terminating this Lease, declare immediately due and payable all Base Rent, additional rent, and other amounts due and coming due under this Lease for the entire remaining term hereof, together with all other amounts previously due, at once; provided, however, that such payment shall not be deemed a penalty or liquidated damages but shall merely constitute advance payment of rent hereunder; or

-9-

(iv)    Without terminating this Lease, and with or without notice, to the extent permitted by law, Landlord may in its own name, but as agent for Tenant, enter upon and take possession of the Premises, remove persons and property therefrom, store such property at Tenant's cost, all without being deemed guilty of trespass or liable for any loss or damage, and Landlord may rent the Premises as agent for Tenant upon such terms as Landlord shall deem necessary or desirable.  Tenant shall remain liable for any deficiency in the full amount due Landlord hereunder and Tenant shall pay such deficiency monthly.  No such reletting shall be construed as an election by Landlord to terminate this Lease, but Landlord may at any time thereafter elect to terminate this Lease by written notice to Tenant; or

(v)    Allow the Premises to remain unoccupied and collect rent from Tenant as it comes due; or

(vi)    Pursue such other remedies as are available at law or equity.

(c)    Neither the commencement of any action or proceeding, nor the settlement thereof, nor entry of judgment thereon shall bar Landlord from bringing subsequent actions or proceedings from time to time, nor shall the failure to include in any action or proceeding any sum or sums then due be a bar to maintenance of any subsequent actions or proceedings for the recovery of such sum or sums so omitted.  A compromise or settlement by Landlord shall not constitute a waiver of any breach of any covenant, condition or agreement contained herein, nor be deemed to operate as a waiver of any subsequent breach thereof.

(d)    No failure by Landlord to timely bill Tenant or any payments hereunder, or to insist upon the strict performance of any term, covenant or condition herein contained shall be deemed a waiver of such payment, term, covenant or condition.  Any subsequent acceptance by Landlord of any sum due hereunder shall not be deemed to be a waiver of any preceding breach or default by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant timely to pay the particular sum so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such sum.  No covenant, term or condition of this Lease shall be deemed to have been waived by Landlord unless such waiver be specifically expressed in writing by Landlord.

(e)    No payment by Tenant or receipt by Landlord of a lesser amount than the full amount of any payment due hereunder shall be deemed to be other than a payment on account of such payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such payment or pursue any other remedy herein provided.

(f)    No claim of Tenant that Landlord shall be in default hereunder or shall have failed to perform all of the terms and conditions of this Lease shall allow Tenant to withhold all or any part of the amounts to be paid by Tenant to Landlord hereunder.

-10-

18.   **SUBORDINATION**.

(a)     This Lease is subject and subordinate to, and Tenant covenants and agreed to subordinate its rights under this Lease to, all ground or underlying leases and to any mortgages and deeds of trust which may now or hereafter affect the Premises or the property on which the Premises are located, and to all renewals, modifications, consolidations, replacements and extensions thereof.

(b)     Tenant shall, in the event of the exercise of the power of sale or deed in lieu of foreclosure under any mortgage or deed of trust, attorn to and recognize the purchaser as Landlord under this Lease, and will enter into a separate agreement of attornment with said purchaser if requested; provided that said purchaser shall not be liable for any act or omission of any prior landlord. The party secured by any such mortgage or deed of trust shall have the rights to recognize this Lease and, in the event of foreclosure or deed in lieu of foreclosure, at the option of such secured party or the purchaser at foreclosure, this Lease shall continue in full force and effect.

(c)     At any time, and from time to time, upon request from Landlord, Tenant agrees to execute, acknowledge and deliver to Landlord or any potential purchaser of the Premises, or to any mortgagee or potential mortgagee, reasonable credit and financial information, and an estoppel certificate or statement in writing certifying to such information with regard to this Lease as may be reasonably or customarily required by the present or potential landlord or mortgagee.

(d)     If, in connection with obtaining financing or refinancing for the property of which the Premises are a part, any banking, insurance or other recognized institutional lender shall request reasonable modifications in this Lease as a condition to such financing, Tenant will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder or materially adversely affect Tenant's interest hereby created.

(e)     It is the intention of Landlord and Tenant that each of the foregoing provisions of this Paragraph 18 be self-operative; however, Tenant covenants and agreed that, upon request of Landlord or any mortgagee, Tenant shall execute and deliver whatever instruments may be required for such purposes and to carry out the intent of any paragraph hereunder, and in the event Tenant fails to do so within ten (10) days after demand in writing, Tenant does hereby make, constitute and irrevocably appoint Landlord as Tenant's attorney-in-fact and in Tenant's name, place and stead so to do. The foregoing power of attorney is a power coupled with an interest.

19.   **SUBLETTING AND ASSIGNMENT**.   Tenant may not assign or sublet the premises or any part thereof, or transfer possession or occupancy thereof to any person, firm or corporation, or transfer or assign this Lease, without the prior written consent of Landlord, nor shall any subletting or assignment hereof be effected by operation of law or otherwise than by

-11-

the prior written consent of Landlord.  The transfer of fifty percent (50%) or more of the voting stock of Tenant, if Tenant is a corporation, or the transfer of fifty percent (50%) or more of the partnership interests in Tenant, if Tenant is a partnership, shall constitute an assignment hereunder.

20.   **BINDING EFFECT**.   The provisions of this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective successors, heirs, legal representatives and assigns; provided however, that no assignment or subletting by, through or under Tenant in violation of Paragraph 19 of this Lease shall vest in such assignee or subtenant any right, title or interest whatsoever.  Upon any sale or conveyance of the Premises by Landlord, Landlord shall be, and hereby is, entirely free and relieved of all covenants and obligations of Landlord hereunder arising or occurring on or after such sale or conveyance.

21.   **ACCESS TO PREMISES**.   Tenant shall allow Landlord, its agents and employees free access to the Premises at all reasonable times to examine, inspect or to protect the Premises, or prevent damage or injury to the Premises, or to make such alterations or repairs as Landlord may deem necessary, and to exhibit the Premises to prospective tenants during the last three (3) months of the term of this Lease.  Tenant will furnish Landlord with a current set of keys to the Premises on a continuing basis.

22.   **ATTORNEYS FEES: INTEREST**.   In the event of the employment of an attorney by Landlord because of the violation by Tenant of any term or provision of this Lease, Tenant shall pay and hereby agrees to pay reasonable attorney's fees and all other costs incurred therein by Landlord, provided a judgment in favor of Landlord is rendered by a court of competent jurisdiction.  All Base Rent, additional rent, other rent, common area maintenance charges, taxes, and any other costs, expenses, sums or amounts payable or reimbursable hereunder by Tenant to landlord shall be deemed to be rental hereunder whether or not designated as such, which, if not promptly paid on or before the date due, time being of the essence, shall bear interest at the rate of the greater of (a) one and one-half percent (1.5%) per month, or (b) the prime rate then being charged by Chase Manhattan Bank (but in no event higher than the highest rate enforceable by law) from the due date until paid.

23.   **HOLDING OVER**.   If Tenant remains in possession of the Premises or any part thereof after expiration of the term hereof without Landlord's express written consent, and without any express agreement between the parties as to rent, Tenant shall be a tenant at sufferance and shall owe Landlord compensation for the period of occupancy subsequent to the expiration of the term at a rate double the Base Rent in effect immediately prior to the expiration of the term. Nothing in this paragraph or elsewhere in this Lease shall be construed as a consent by Landlord to the possession of the Premises by Tenant after the expiration of the term. Notwithstanding any other provisions of this Lease to the contrary, the Landlord shall have the absolute, unconditional and exclusive right to terminate this Lease at any time and for any reason upon 120 days prior written notice to the tenant.  In the event Landlord exercises such termination right, the Lease shall terminate effective as of the date that is 120 days after Landlord's notice hereunder (the "Termination Date") and Tenant shall vacate the Premises and return possession thereof to Landlord on the Termination Date in the condition required under,

-12-

and otherwise in accordance with, all Lease provisions as if the Termination Date were the original expiration date of the Lease. Tenant shall be responsible for paying all rent and additional rent through and including the Termination Date and for any hold-over period thereafter, if any, pursuant to the Lease provisions.

24.    **RECORDING**.   Neither this Lease, nor any memorandum thereof shall be recorded in any public record without Landlord's prior written consent.

25.    **NOTICES**.   All notices required or desired to be given hereunder by either party to the other shall be given in writing, by certified or registered mail, hand delivery, or telephone facsimile transmission. Notices to the respective parties shall be addressed as follows:

> If to Landlord:     7C Gwynns Mill Court
>                     Owings Mills, MD 21117
>                     c/o Bare Feet Enterprises, Inc.

> If to Tenant:     1115 N. Rolling Road
>                   Catonsville, MD 21228

Either party may, by like written notice, designate a new address to which said notices shall be directed.

26.    **ENTIRE AGREEMENT; MODIFICATION**.   This Lease contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained or referred to herein shall have any force or effect. This Lease may not be modified in any way except by a writing subscribed by ALL parties hereto.

27.    **SPECIAL STIPULATIONS**.   Any special stipulations which are attached hereto and made a part hereof shall control if in conflict with any provisions of this Lease.

28.    **CAPTIONS**.   The captions of paragraphs hereunder are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this Lease nor in any manner affect this Lease.

29.    **TENANT OBLIGATIONS**.   It is the intent of the parties hereto that all rental payable under this Lease shall be absolutely "net" to landlord, except as to the express obligations of Landlord contained herein, and accordingly, all costs, expenses and obligations of every kind related to all taxes, insurance, repair, replacement, rebuilding, painting, cleaning, maintenance, operation and upkeep of the Premises which are not specifically assumed by Landlord under this Lease are deemed to be the responsibility of Tenant, and Tenant shall, and does hereby, release and indemnify Landlord from and against all such costs, expenses and obligations not specifically assumed by Landlord in this Lease.

-13-

30.   **RULES AND REGULATIONS**.   The rules and regulations, if any, annexed hereto, and all rules and regulations which Landlord may from time to time adopt and promulgate for the government and management of the property of which the Premises are a part, are hereby made a part of this Lease and shall be fully observed and performed by Tenant as if the same were contained herein as covenants.  A breach of said rules and regulations by Tenant shall be deemed a material breach of this Lease.

31.   **INDEMNIFICATION**.

(a)   Tenant shall, and does hereby, indemnify, release and save harmless Landlord, and Landlord's agents, servants, employees, and attorneys from and against (i) any and all suits, actions, judgments, damages, costs, expenses and attorney's fees incurred in the defense of any actions or proceedings arising out of or related to any loss of life, personal injury or property damage, or (ii) any and all other demands, claims or actions of any nature arising out of or related to this Lease or any transaction or occurrence in, on, upon or near or involving the Premises, Common Areas or the occupancy or use by Tenant thereof.

(b)   Anything in this Lease to the contrary notwithstanding, Tenant covenants and agrees that Landlord shall have no personal liability hereunder, and Tenant shall look solely to the estate or property of Landlord in the land and buildings comprising the property of which the Premises are a part for the collection of any judgment or other judicial process arising out of any default or breach by Landlord with respect to any of the terms or covenants of this Lease to be observed or performed by Landlord, and no other assets of Landlord shall be subject to levy, execution or other procedures for the satisfaction of Tenant's remedies.

(c)   This Paragraph 31 shall survive the termination of this Lease.

32.   **POSSESSION**.   If Landlord shall be unable to give possession of the Premises on the Commencement Date by reason of the fact that the Premises are located in a building being constructed and which has not been sufficiently completed to make the Premises ready for occupancy, Landlord shall not be subject to any liability for the failure to give possession on said date.  Under such circumstances, the rent reserved and covenanted to be paid herein shall not commence until possession of the Premises is given or the Premises are available for occupancy by Tenant.  No such failure to give possession on the date of commencement of the term shall in any other respect affect the validity of this Lease or the obligations of Tenant hereunder, nor shall same be construed to extend the term of this Lease.  If permission is given to Tenant to enter into possession of the Premises or to occupy premises other than the demised Premises prior to the Commencement Date, Tenant covenants and agrees that such occupancy shall be deemed to be under all terms, covenants, conditions and provisions of this Lease.

33.   **APPLICABLE LAW**.   This Lease shall be construed in accordance with the laws of the State of Maryland.  Time is of the essence of this Lease and all covenants contained herein.

-14-

34.   **QUIET ENJOYMENT**.   Landlord covenants that it has full right and power to execute and perform this Lease, and that Tenant, upon payment of all amounts due hereunder and performance of all covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the Premises and all rights, easements, appurtenances and privileges thereunto belonging or in any way appertaining, during the full term of this Lease and any extension s or renewals hereof.

35.   **WAIVER OF TRIAL BY JURY**.   **LANDLORD AND TENANT WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, COUNTERCLAIM, OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS LEASE.  THIS WAIVER APPLIES TO ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS AND PROCEEDINGS, INCLUDING PARTIES WHO ARE NOT PARTIES TO THIS LEASE.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY TENANT AND TENANT ACKNOWLEDGES THAT NEITHER LANDLORD, NOR ANY PERSON ACTING ON BEHALF OF LANDLORD, HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRAIL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. TENANT FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS LEASE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.  TENANT FURTHER ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION AND AS EVIDENCE OF THIS FACT SIGNS ITS INITIALS.**

(Initials of Tenant)

IN WITNESS WHEREOF, the parties hereto have duly executed this Lease Agreement in duplicate, individually or through their authorized officers, agents, or attorneys-in-fact, as the case may be, causing their respective sales to be affixed hereto the day and year first above written.

WITNESS/ATTEST:                          LANDLORD:

                                          DUKE REALTY, LLC

                                          By:_____(SEAL)

-15-

TENANT:

_____   Richard M. Gonzalez (SEAL)
                                  Printed Name:  RICHARD M. GONZALEZ

_____   Vicki M. Gonzalez _____ (SEAL)
                                  Printed Name:  VICKI M. GONZALEZ

                                  VNR ENTERPRISES, LLC

_____   By: _____ (SEAL)
                                  Richard M. Gonzalez,
                                  Member

_____   By: _____ (SEAL)
                                  Vicki M. Gonzalez,
                                  Member


STATE OF _MARYLAND_, COUNTY OF ___BALTIMORE___, TO WIT:

   **I HEREBY CERTIFY** that on this _15_ day of _MARCH_____, 2005, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared _Meir Duke_ _____, who acknowledged himself/herself to be the _Member_ _____ of DUKE REALTY, LLC, a limited liability company, and that he/she, as such _Member_ _____, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing, in my presence, the name of the said limited liability company, by himself/herself as _Member_.

   **WITNESS** my hand and Notarial Seal.

                                  _____
                                           Notary Public

                                  My Commission expires: _____

-16-

STATE OF _MARYLAND_ , COUNTY OF _BALTIMORE_ , TO WIT:

I HEREBY CERTIFY that on this _15_ day of _March_, 2005, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared RICHARD M. GONZALEZ, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, who signed the same in my presence, and acknowledged that he executed the same for the purposes therein contained.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission expires: _12/1/06_

STATE OF _MARYLAND_ , COUNTY OF _BALTIMORE_ , TO WIT:

I HEREBY CERTIFY that on this _15_ day of _March_, 2005, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared VICKI M. GONZALEZ, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, who signed the same in my presence, and acknowledged that she executed the same for the purposes therein contained.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission expires: _12/1/06_

STATE OF _MARYLAND_ , COUNTY OF _Baltimore_ , TO WIT:

I HEREBY CERTIFY that on this _15_ day of _March_, 2005, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared RICHARD M. GONZALEZ and VICKI GONZALEZ M. GONZALEZ, who acknowledged themselves to be the Members of VNR ENTERPRISES, LLC, a limited liability company, and that as such Members, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing, in my presence, the name of the said limited liability company, by themselves as Members.

-17-

**WITNESS** my hand and Notarial Seal.

_____
Notary Public

My Commission expires: __12/1/06__

cc12307-DUKE

-18-

3320 Hidden Creek Drive
Reisterstown, Md 21136
December 14, 2009
In regards to: Lease Renewal Notice



*Mailed 12/14/09*

Duke Realty LLC
The Loughlin Management Group Inc.
60 West Steet , Suite 204
Annapolis, Md 21401
Attention: Kenneth E. Dodson RPA

Dear Duke Realty LLC:
Subject: 1115 North Rolling Road Lease Renewal

Please consider this as our official notice of our intent to renew our current lease at the
end of the current lease which ends on 4/30/2010.  The new lease as per our original lease
from March 15th, 2005 will be for the 5 year period from 5/1/2010 – 4/30/2015.

We under stand that our monthly lease amount each year will be as follow:

| | |
|---|---|
| 5/1/2010 – 4/30/2011 | $4637.10 |
| 5/1/2011 – 4/30/2012 | $4776.21 |
| 5/1/2012 – 4/30/2013 | $4919.50 |
| 5/1/2013 – 4/30/2014 | $5067.08 |
| 5/1/2014 – 4/30-2015 | $5219.09 |

This amount does not include our annual real estate taxes, insurance premiums, common
fees or water bill.  We understand that those are additional and will be paid as required.

Thank you for your time and we look forward to being ongoing tenancy.

Best regards,
Vicki and Rick Gonzalez

Co Owner Tabu Social Club
VNR Enterprises LLC
cc:     VNR Enterprises LLC
        DBA Tabu Social Club
        3320 Hidden Creek Drive
        Reisterstown, Md 21136



## AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE (the "Amendment") is made as of <u>3-30-10</u>, 2010, by and between:

LANDLORD:    DUKE REALTY, LLC

TENANT:    VNR ENTERPRISES, LLC and RICHARD M. GONZALEZ and VICKI M. GONZALEZ

PREMISES:    1115 N. ROLLING ROAD

This Amendment amends the Lease dated March 15, 2005, by and between the Landlord and Tenant for the Premises.

### AMENDMENT

1. Tenant has notified Landlord of their intent to renew the Lease for a five year term beginning on May 1, 2010, and ending on April 30, 2015, at the monthly Base Rent as follows:

| Period | Monthly Amount |
|---|---|
| May 1, 2010 to April 30, 2011 | $4,637.10 |
| May 1, 2011 to April 30, 2012 | $4,776.21 |
| May 1, 2012 to April 30, 2013 | $4,919.50 |
| May 1, 2013 to April 30, 2014 | $5,067.08 |
| May 1, 2014 to April 30, 2015 | $5,219.09 |

2. Section 8. of the Lease, entitled "COMMON AREAS" is hereby amended to delete the following;

   "Tenant's annual share of such costs and expenses shall be computed as $.50 per square foot of Tenant's Premises".

   The intent of this Lease Amendment is to provide that beginning May 1, 2010, Tenant's share (12%) of the Common Areas Expenses shall be 12%.

3. The Security Deposit shall be increased to $4,500.00 by May 1, 2010.



Except as amended by this Amendment, the terms of the Lease shall remain in full force and effect.

WITNESS:

LANDLORD:
DUKE REALTY, LLC

By: _____ (SEAL)
    Meir Duke, Member

TENANT:
VNR ENTERPRISES, LLC

By: _____ (SEAL)
    Richard M. Gonzalez, Member

By: _____ (SEAL)
    Vicki M. Gonzalez, Member

_____ (SEAL)
RICHARD M. GONZALEZ

_____ (SEAL)
VICKI M. GONZALEZ



Mailed
Certified Return
Receipt
2/22/10

**Tabu Social Club**
**1115 North Rolling Road**
**Catonsville, Md 21228**

VNR Enterprises, LLC.                                    February 15, 2010
3320 Hidden Creek Dr.
Reisterstown, Md. 21136

Coady & Farley
400 Allegheny Ave.
Towson, Md. 21204

ATTN: Michael L. Snyder

Mr. Snyder,

      Regarding your letter dated January 26, 2010 and your proposed Amendment to Lease with Duke Realty, LLC. Having taken the time to review your letter, review the original lease agreement and to confer with our attorney, it is our collective opinion that pursuant to the terms set forth in the original lease agreement, written by you, it is our option to renew, not the Landlord's to deny, provided we are not in default of that lease. We are not now, nor have we been in default of the lease at any time.

      Having said all of that, we are willing to sign off on the addendum with one small change. We respectfully request a cap of $8,000 per year as our share of the "Common Area" expenses. So, simply stated, we are willing to pay the 12% or $8,000, whichever is less. All other terms of the proposed Amendment are agreeable. This allows us to plan and budget for a worst case scenario. This concession is in interest of maintaining goodwill with the landlord while still protecting our own business interests.

Please review this with your client and if agreeable, draft the amendment that I have proposed and forward it to us for final review and execution.

Sincerely,


Richard M. Gonzalez
VNR Enterprises, LLC



              CO OWNER
          VNR ENTERPRISES LLC
       3320 HIDDEN CREEK DRIVE
      REISTERSTOWN, MD 21136
       DBA TABU SOCIAL CLUB

# COADY & FARLEY

ATTORNEYS AND COUNSELLORS AT LAW
400 ALLEGHENY AVENUE
TOWSON, MARYLAND 21204

(410) 337-0200
FACSIMILE (410) 337-0164
EMAIL: general@coadyandfarley.com

MICHAEL L. SNYDER
PATRICIA O'C.B. FARLEY
THOMAS J. RYAN
KELLIE M. GOMBESKI

JOHN T. COADY, EMERITUS

CHARLES P. COADY (1868-1934)
JOHN A. FARLEY (1889-1958)
CHARLES P. COADY, JR. (1901-1983)
JOHN A. FARLEY, JR. (1921-2005)

THOMAS J. CARACUZZO (1914-1994)

March 3, 2010

Mr. Richard M. Gonzalez
VNR Enterprises, LLC
3320 Hidden Creek Drive
Reisterstown, MD 21136

Dear Richard:

This letter is in response to your letter to me dated February 15, 2010. Mr. Duke is not willing to cap your share of the Common Area expenses at $8,000.00 per year. Mr. Duke has told me that your share has always been less than $8,000.00 per year, including 2009, but he is not willing to guarantee that it will always remain less than $8,000.00 per year, because he cannot control some of the expenses. He also reminds you that he must provide you with proof of any common area expenses. He also states that he does not see any significant increases in these expenses in the near future.

Please respond promptly as to whether or not you wish to continue your lease.

Sincerely yours,

Michael L. Snyder

MLS:lm
cc:    Mr. Meir Duke
       Mr. Steve Enslow



*Representing Our Clients In The Practice of Law For More Than 100 Years*
*Est. 1894*

# The Loughlin Management Group, Inc.

INVOICE #740-1115-2009

April 26, 2010

Richard M. & Vicki M. Gonzalez
VNR Enterprises
Dba Tabu Social Club
3320 Hidden Creek Drive
Reisterstown, Maryland  21136

For Professional Services Rendered:

Re:    1115 N. Rolling Road
       Catonsville, Maryland 21228

## 2009 OPERATING EXPENSE RECONCILIATION

| | |
|---|---:|
| 2009 Actual Tax Expenses: | $   72,922.70 |
| Tenant's Pro-Rata Share of Increase: | x     0.1200 |
| | $     8,750.72 |
| Less Amount Previously Billed: | (8,950.62) |
| 2009 Tax Expenses Owed: | ($     199.90) |
| | |
| 2009 Actual Insurance Expenses: | $   22,228.00 |
| Tenant's Pro-Rata Share of Increase: | x     0.1200 |
| | $     2,667.36 |
| Less Amount Previously Billed: | (2,244.83) |
| 2009 Insurance Expenses Owed: | $       422.53 |
| | |
| 2009 Actual Operating Expenses (incl. 15% admin): | $   80,967.41 |
| Tenant's Pro-Rata Share of Increase: | x     0.1200 |
| | $     9,716.09 |
| | |
| Lessor of OEA or Cap OEA ($0.50/psf x 8,000sf) | $     4,000.00 |
| Less Amount Previously Billed: | (3,666.63) |
| 2009 Operating Expenses Owed: | $       333.37 |
| | |
| Total 2009 Operating Expenses owed from / (due to) Tenant: | $       556.00 |
| | |
| **TOTAL AMOUNT DUE:** | **$       556.00** |

Please make checks payable to:

Duke Realty, LLC
c/o The Loughlin Management Group, Inc.
60 West Street, Suite 204
Annapolis, Maryland 21401



Real and Personal Property Tax for Baltimore County, MD

## BALTIMORE COUNTY, MARYLAND
## STATE AND COUNTY REAL PROPERTY TAXES

### Ownership and Address Information

| | |
|---|---|
| **Parcel ID:** | 01-09-000083 |
| **Tax Year:** | 2010 |
| **Owner Name:** | Duke Realty LLC |
| **Mailing Address:** | 12300 Highgrove Ct, Reisterstown, MD 21117 |
| **Parcel/Situs Address:** | Vola Ave |
| **District:** | 01 |
| **Property Class:** | 06 Commercial |
| **Semi-Annual Eligible:** | No |
| **Miscellaneous:** | |

### Legal Description

LOTS 8-9-10
167 E ROLLING ROAD

### Assessment Information

Full Year                              182,000
Tax rate for Full Year: County $1.10000, State $0.11200 per $100 of Assessed Value

### Tax Receivable Amounts

**Bill Date:**   07/01/2009

| | Billed Amount | Paid | Outstanding | First SA | Second SA |
|---|---|---|---|---|---|
| Taxes/Charges | 2,205.84 | 2,205.84 | .00 | .00 | .00 |
| Fees | .00 | .00 | .00 | .00 | .00 |
| Gross/Base | 2,205.84 | 2,205.84 | .00 | .00 | .00 |
| Discount Applied | .00 | .00 | .00 | .00 | .00 |
| New Discount | .00 | .00 | .00 | .00 | .00 |
| Interest Applied | .00 | .00 | .00 | .00 | .00 |
| New Interest | .00 | .00 | .00 | .00 | .00 |
| Total | 2,205.84 | 2,205.84 | .00 | .00 | .00 |

Real and Personal Property Tax for Baltimore County, MD

**Payments Received**

| Payment | Payment Type | Interest/Discount Calculation Date | Amount Paid |
|---|---|---|---|
| Full | FY | 09/01/2009 | 2,205.84 |

**Detailed Breakdown of Receivable Amounts**

| Description | Amount | Tax Credits |
|---|---|---|
| County Tax | 2,002.00 | |
| State Tax | 203.84 | |
| Total | 2,205.84 | |

The receivable tax amounts reflect the application of the tax credits listed.

Real and Personal Property Tax for Baltimore County, MD

# BALTIMORE COUNTY, MARYLAND
## STATE AND COUNTY REAL PROPERTY TAXES

### Ownership and Address Information

| | |
|---|---|
| Parcel ID: | 01-07-150690 |
| Tax Year: | 2010 |
| Owner Name: | Duke Realty LLC |
| Mailing Address: | 12300 Highgrove Ct, Reisterstown, MD 21117 |
| Parcel/Situs Address: | 1115 N Rolling Rd |
| District: | 01 |
| Property Class: | 06 Commercial |
| Semi-Annual Eligible: | No |
| Miscellaneous: | |

### Legal Description

IMPS1.901 AC ES
1115 N ROLLING RD

### Assessment Information

Full Year                     1,291,800
Tax rate for Full Year: County $1.10000, State $0.11200 per $100 of Assessed Value

### Tax Receivable Amounts

Bill Date:      07/01/2009

| | Billed Amount | Paid | Outstanding | First SA | Second SA |
|---|---|---|---|---|---|
| Taxes/Charges | 19,863.14 | 19,863.14 | .00 | .00 | .00 |
| Fees | .00 | .00 | .00 | .00 | .00 |
| Gross/Base | 19,863.14 | 19,863.14 | .00 | .00 | .00 |
| Discount Applied | .00 | .00 | .00 | .00 | .00 |
| New Discount | .00 | .00 | .00 | .00 | .00 |
| Interest Applied | .00 | .00 | .00 | .00 | .00 |
| New Interest | .00 | .00 | .00 | .00 | .00 |
| Total | 19,863.14 | 19,863.14 | .00 | .00 | .00 |

Real and Personal Property Tax for Baltimore County, MD

**Payments Received**

| Payment | Payment Type | Interest/Discount Calculation Date | Amount Paid |
|---------|-------------|-----------------------------------|-------------|
| Full | FY | 09/02/2009 | 19,863.14 |

**Detailed Breakdown of Receivable Amounts**

| Description | Amount | Tax Credits |
|-------------|--------|-------------|
| County Tax | 14,209.80 | |
| State Tax | 1,446.82 | |
| Bay Res Fee | 210.00 | |
| Sewer Benefit | 237.12 | |
| Sewer Service | 3,299.66 | |
| Utility | 171.92 | |
| Water Benefit | 109.44 | |
| Water Distribution | 178.38 | |
| Total | 19,863.14 | |

The receivable tax amounts reflect the application of the tax credits listed.

Real and Personal Property Tax for Baltimore County, MD

# BALTIMORE COUNTY, MARYLAND
## STATE AND COUNTY REAL PROPERTY TAXES

### Ownership and Address Information

| | |
|---|---|
| Parcel ID: | 01-18-473170 |
| Tax Year: | 2010 |
| Owner Name: | Duke Realty LLC |
| Mailing Address: | 12300 Highgrove Ct, Reisterstown, MD 21117 |
| Parcel/Situs Address: | 1103 Rolling Rd |
| District: | 01 |
| Property Class: | 06 Commercial |
| Semi-Annual Eligible: | No |
| Miscellaneous: | |

### Legal Description

IMPS2.461 AC ES
ROLLING ROAD

### Assessment Information

Full Year                2,976,200
Tax rate for Full Year: County $1.10000, State $0.11200 per $100 of Assessed Value

### Tax Receivable Amounts

Bill Date:    07/01/2009

| | Billed Amount | Paid | Outstanding | First SA | Second SA |
|---|---|---|---|---|---|
| Taxes/Charges | 46,304.17 | 46,304.17 | .00 | .00 | .00 |
| Fees | .00 | .00 | .00 | .00 | .00 |
| Gross/Base | 46,304.17 | 46,304.17 | .00 | .00 | .00 |
| Discount Applied | .00 | .00 | .00 | .00 | .00 |
| New Discount | .00 | .00 | .00 | .00 | .00 |
| Interest Applied | .00 | .00 | .00 | .00 | .00 |
| New Interest | .00 | .00 | .00 | .00 | .00 |
| Total | 46,304.17 | 46,304.17 | .00 | .00 | .00 |

Real and Personal Property Tax for Baltimore County, MD

## Payments Received

| Payment | Payment Type | Interest/Discount Calculation Date | Amount Paid |
|---------|--------------|-----------------------------------|-------------|
| Full | FY | 09/02/2009 | 46,304.17 |

## Detailed Breakdown of Receivable Amounts

| Description | Amount | Tax Credits |
|-------------|--------|-------------|
| County Tax | 32,738.20 | |
| State Tax | 3,333.34 | |
| Bay Res Fee | 480.00 | |
| Sewer Benefit | 227.76 | |
| Sewer Service | 9,170.76 | |
| Utility | 122.18 | |
| Water Distribution | 231.93 | |
| Total | 46,304.17 | |

The receivable tax amounts reflect the application of the tax credits listed.

JUL 17 2009

## Gilbert Advising & Appraising, LLC
5601 Newbury Street, Suite 5
Baltimore, MD 21209-3603
Telephone 410 539-7725, fax 410 578-0200, email ggilbert@gilbertappraising.com

BUILDING _740_
VENDOR # _GIL20_

INVOICE NO: 08051 f
INVOICE DATE: 9 July 2009
CLIENT:

| G/L ACCOUNT | AMOUNT |
|---|---|
| _4670_ | _3079._ |

Pleasant Plains CVS BT, Hillendale BT, Duke Realty, 4904 ~~Drumis Avenue~~
ATTN:  Mr. Meir Duke
c/o Bare Feet Shoes
7-C Gwynns Mill Court
Owings Mills, MD 21117-3528
Telephone:  410 902-6090; fx 6094; cell 443 277-7008

APPROVED   _G 7/17_

| REFERENCE | DESCRIPTION | AMOUNT |
|---|---|---|
| Gj 08051 | Re: 3 retail centers, 5 assembled lots<br>Baltimore County, MD | |
| | Total work through 4/1/09 | $11,376 |
| | Two $2500 Retainers Paid | - $5,000 |
| | Subtotal $6376; no payment rec'd from 4/1/09 | |
| | Invoice; | |
| | Work from 4/2/09 thru 5/4/09; hearing 5/4/09 | $2,164 |
| | BALANCE prior to late fees & interest | $8,540 |
| | CURRENT BALANCE OVERDUE | $8,798 |

Thank you!  Please pay promptly to avoid interest.

PAYMENT DUE UPON RECEIPT OF INVOICE.  PLEASE RETURN COPY WITH REMITTANCE.

NOTE:  INTEREST AT 1-1/2% PER MONTH IS CHARGED ON ALL ACCOUNTS 30 DAYS OVERDUE,
PLUS COLLECTION EXPENSES AND LEGAL FEES.

| | | |
|---|---|---|
| Balance now due GA&A | $8,540 | Grand total from client |
| | 1.50% | Interest per month |
| | $8,668 | Balance due after 30 days |
| | $8,798 | Balance due after 60 days |
| | $8,930 | Balance due after 90 days |
| | $9,199 | Balance due after 120 days + $135 collection cost |
| | $9,472 | Balance due after 150 days + $135 collection cost |
| | $9,749 | Balance due after 180 days + $135 collection cost |

The firm's Federal ID # is 52-225 4221.

# *The Loughlin Management Group, Inc.*

January 7, 2010

Richard M. & Vicki M. Gonzalez
VNR Enterprises
dba Tabu Social Club
3320 Hidden Creek Drive
Reisterstown, Maryland  21136

Re:    Rent Adjustment
         1115 N. Rolling Road
         Catonsville, Maryland 21228

Dear Mr. & Mrs. Gonzalez:

Per your Lease with Duke Realty, LLC for 1115 N. Rolling Road, Catonsville, Maryland, **effective January 1, 2010** your new adjusted monthly rent will be:

### $5,703.23

This amount was derived by adding your estimated 2010 Real Estate Tax Expenses to your monthly base rent:

| | | |
|---|---|---|
| Est. 2010 Expense: | $ 51,970.50 | = 563.98 |
| Monthly Pro-Rata Share: | x   .12000 | 48,298.28 |
| | 6,236.46 | 7,028.00 |
| | | 19,383.78 |
| Lesser OEA or Cap OEA: | $  4,000.00 | |
| | /12 | 45,998.74 |
| | | x 1.15 |
| Monthly 2010 Est. Operating Expenses: | $     333.33 | 51,970.50 |
| Est. 2010 Real Estate Tax Expense: | $ 65,922.65 | |
| Monthly Pro-Rata Share: | x   .12000 | |
| | 7,910.72 | |
| | /12 | |
| Monthly 2010 Est. Real Estate Tax Expenses: | $     659.23 | |
| Est. 2010 Insurance Expense: | $ 20,863.00 | |
| Monthly Pro-Rata Share: | x   .12000 | |
| | 2,503.56 | |
| | /12 | |
| Monthly 2010 Est. Insurance Expenses: | $     208.63 | |

| | | |
|---|---|---|
| Monthly Base Rent: | $ | 4,502.04 |
| Monthly 2010 Est. Real Estate Tax Expenses: | | 659.23 |
| Monthly 2010 Est. Insurance Expenses: | | 208.63 |
| Monthly 2010 Est. Operating Expenses: | | 333.33 |
| Adjusted Rent: | $ | 5,703.23 |

Should you have any questions regarding this matter, please contact me.

Yours truly,

Steve Enslow, RPA
Vice President

SE/lab

# *The Loughlin Management Group, Inc.*

March 31, 2010

Richard M. & Vicki M. Gonzalez
VNR Enterprises
/dba/ Tabu Social Club
3320 Hidden Creek Drive
Reisterstown, Maryland  21136

Re:     Rent Adjustment (#740-1115)
        1115 N. Rolling Road
        Catonsville, Maryland  21228

Dear Mr. & Mrs. Gonzalez:

Per your Lease and recent Amendment with Duke Realty, LLC for 1115 N. Rolling Road, Catonsville, Maryland, **effective May 1, 2010** your new adjusted monthly rent will be:

**$6,024.67**

This amount was calculated as follows:

| | |
|---|---|
| Adjusted Monthly Rent: | $ 4,637.10 |
| Adjusted Monthly Est. 2010 Operating Expenses: | 519.71 |
| *($51,970.50 x 12%) / 12 Months* | |
| Monthly Est. 2010 Real Estate Tax Expenses: | 659.23 |
| Monthly Est. 2010 Insurance Expenses: | 208.63 |
| **Total Adjusted Monthly Rent:** | **$ 6,024.67** |

Should you have any questions regarding this matter, please contact me.

Sincerely,

Steve Enslow, RPA
Vice President

SE/ef

*UNR Enterprise LLC*

# The Loughlin Management Group, Inc.

INVOICE #740-1115-2010

03/15/11

Richard M. & Vicki M. Gonzalez
VNR Enterprises
Dba Tabu Social Club
3320 Hidden Creek Drive
Reisterstown, Maryland  21136

---

For Professional Services Rendered:

Re:   1115 N. Rolling Road
       Catonsville, Maryland 21228

## 2010 OPERATING EXPENSE RECONCILIATION

| | | |
|---|---|---:|
| 2010 Actual Tax Expenses: | $ | 69,913.41 |
| Tenant's Pro-Rata Share of Increase: | x | 0.1200 |
| | $ | 8,389.61 |
| Less Amount Previously Billed: | | (7,910.76) |
| 2010 Tax Expenses Owed: | $ | 478.85 |
| | | |
| 2010 Actual Insurance Expenses: | $ | 26,433.00 |
| Tenant's Pro-Rata Share of Increase: | x | 0.1200 |
| | $ | 3,171.96 |
| Less Amount Previously Billed: | | (2,503.56) |
| 2010 Insurance Expenses Owed: | $ | 668.40 |
| | | |
| 2010 Actual Operating Expenses (incl. 15% admin): | $ | 129,509.04 |
| Tenant's Pro-Rata Share of Increase: | x | 0.1200 |
| | $ | 15,541.09 |
| | | |
| Lessor of OEA or Cap OEA ($0.50/psf x 8,000sf) | $ | 4,000.00 |
| Pro-rated 01/10-04/30: | x | 4/12 |
| | $ | 1,333.33 |
| | | |
| Tenant's Pro-rata Share of OEA: | $ | 15,541.09 |
| Pro-rated 05/10-12/31: | x | 8/12 |
| | $ | 10,360.72 |
| | | |
| 2010 OEA Owed: | $ | 11,694.06 |
| Less Amount Previously Billed: | | (6,236.52) |
| 2010 Operating Expenses Owed: | $ | 5,457.54 |
| | | |
| **TOTAL AMOUNT DUE:** | $ | **6,604.79** |

Please make checks payable to:

Duke Realty, LLC
c/o The Loughlin Management Group, Inc.
60 West Street, Suite 204
Annapolis, Maryland 21401



*60 West Street, Suite 204, Annapolis, Maryland 21401 • (410) 280-0220 • Fax (410) 280-0221*
*www.loughlinmanagement.com*

# The Loughlin Management Group, Inc.

INVOICE #740-1115-2008

04/30/2009

Richard M. & Vicki M. Gonzalez
VNR Enterprises
Dba Tabu Social Club
3320 Hidden Creek Drive
Reisterstown, Maryland 21136

For Professional Services Rendered:

Re:   1115 N. Rolling Road
      Catonsville, Maryland 21228

### 2008 OPERATING EXPENSE RECONCILIATION - REVISED

| | | |
|---|---|---|
| 2008 Actual Tax Expenses: | $ 74,588.74 | |
| Tenant's Pro-Rata Share of Increase: | x   0.1200 | |
| | $ 8,950.65 | |
| Less Amount Previously Billed: | (1,348.00) | |
| 2008 Tax Expenses Owed: | $ 7,602.65 | |
| | | |
| 2008 Actual Insurance Expenses: | $ 18,707.00 | |
| Tenant's Pro-Rata Share of Increase: | x   0.1200 | |
| | $ 2,244.84 | |
| Less Amount Previously Billed: | (300.00) | |
| 2008 Insurance Expenses Owed: | $ 1,944.84 | |
| | | |
| 2008 Actual Operating Expenses (incl. 15% admin): | $ 72,689.29 | _A_ |
| Tenant's Pro-Rata Share of Increase: | x   0.1200 | |
| | $ 8,722.72 | ( 4000 ) |
| | | |
| OEA CAP: (8,000sf x $0.50/sf): $4,000.00 | | |
| | | |
| Lessor of OEA or OEA CAP: | $ 4,000.00 | |
| Less Amount Previously Billed: | (4,000.00) | |
| 2008 Operating Expenses Owed: | $ 0.00 | |
| | | |
| Total 2008 Operating Expenses owed from / (due to) Tenant: | $ 9,547.49 | |
| | | |
| **TOTAL AMOUNT DUE:** | $ 9,547.49 | |

Please make checks payable to:                    $15,195.49 =

Duke Realty, LLC
c/o The Loughlin Management Group, Inc.
60 West Street, Suite 204
Annapolis, Maryland 21401

